May it please the court. Good morning. My name is Lisa Basant and I have the privilege of representing the appellant in this case, Mr. Ruiz. Mandatory life. That's why we are here. Mr. Ruiz was one of 20 defendants named in a 24 count indictment. He was the only individual to go to trial. He is a Mexican national. At trial, he was found guilty of murder. While the government pleaded in its count one conspiracy, 20 individuals, it pared down its evidence in the trial to a two-week period between September 9th and September 26th of 2014. The conspiracy itself was alleged in count one of the indictment as being over a 13-month period. So Mr. Ruiz was found guilty of murder. He was found guilty of murder. He was found guilty of murder. He was found guilty of murder. He was found guilty of murder. The government joined the conspiracy in the last two weeks. Well, as I understand it, you concede there's only one conspiracy, right? There's only one conspiracy pled. Is there one conspiracy? Absolutely not. As I understand the record, you even concede there's one conspiracy. Perhaps that was inartful pleading on my part. But what we have attempted to bring to the court's attention are the arguments that were raised by the trial court, Mr. Donovan, when he said what the government proved in court was not one huge conspiracy, but rather many conspiracies. A conspiracy involving Rodriguez and Mr. Leland in Great Falls, and another conspiracy involving Rodriguez and Mr. Griner out of Havre. Well, but even in your argument in your brief, it seems like you don't reference any other conspiracy from that which the jury reasonably convicted your client, if you will. A conspiracy which had two different places where people were doing things in the middle of it. The conspiracy that was pled involved five locations and 20 different defendants. What Mr. Donovan argued in his Rule 29 is that no, that wasn't the evidence that was presented to the jury, and certainly that there were multiple conspiracies. If we were to take the government's argument that this was an ongoing huge conspiracy without any evidence, what the government would like to say, as long as you've got one person supplying it, we have one conspiracy working its way all the way down until we finally get someone who is just a mere user. If you get a little specific for me, because when I was reading through this, that's why I asked you the questions. It seemed to me there was a 14-month investigation that Rodriguez was a central distributor and source, that he fronted large amounts of drugs to both Leland and Griner. Now, I may not be saying these names right. That then your client joined, and he became the enforcer and the translator for the main source of supply, and that he and Rodriguez then threatened Lampert because the success of the entire operation was in jeopardy, and they distributed drugs in Great Falls and Butte. Now, that seems to me to be what was argued and what the jury looked at in determining this question. But that's not what was pleaded. Just a minute. I'm having a tough time understanding, reading the pleadings, why that wasn't pleaded. Why the individual mini-conspiracies? I gave you the central feeling of the conspiracy, if you will. I looked at the pleadings, and I said, does this match? It seemed to match. It doesn't match. It doesn't match at all. A conspiracy is not just drug dealers who want to continue to distribute drugs. There has to be so much more. Well, is the problem that the indictment doesn't charge properly, or is the problem that the jury wasn't sure which conspiracy it was supposed to convict on, and therefore was having trouble on the question of unanimity among the jury members? I think it's a little bit of both, Your Honor. I think that this was a broad, complex pleading of this conspiracy, as they call it. But there is definitely a problem of unanimity. Not only in count one of the conspiracy, but count five, which is a substantive count of possession with intent. There's quite a bit of problem in the pleading of this case. You often have that problem of unanimity when you've got multiple defendants, but here he went to trial by himself. No, I would disagree with you respectfully on that point. It isn't just whether you have one individual who exercises his right to trial. It is whether or not there was plausible jury confusion. And that's what we have here. We have jury confusion. What conspiracy are we talking about? There is absolutely no information that was brought out in trial that Greiner and Leland had any codependency or any agreement between themselves to make this entire conspiracy work. Greiner and Rodriguez, and I believe Greiner even said Yalop was in there as well, they had the agreement, you give me four ounces of methamphetamine, I will pay you $4,000. That's their agreement. What you do after that, we don't have any control over. The success of the agreement does not continue. Did you ever ask for a unanimity instruction? No, the trial counsel did not ask for a unanimity instruction. He didn't ask for a unanimity instruction, so therefore if the court failed to give one, which I'm not sure they did, then it's reviewed for plain error, right? Absolutely. You are correct, Your Honor. And then it seemed to me that the jury instructions the court gave covered the same concept as the unanimity instruction. Instruction number five said, you must find that there was a plan to commit at least one of the alleged crimes alleged in the indictment as an object or purpose of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit. Why is that so different from the very unanimity instruction you may have wanted? Well, the unanimity instruction would have directed the jury to make sure that what they are convicting on are the same facts. Well, that's exactly what it says. You must find there was a plan, at least one of the crimes, as an object with all of you agreeing as to the particular crime where the conspirators agreed to commit. That's what five says. But what is the particular crime? Well, they can determine the crime, but the problem comes in that they do say you've got to agree to this particular crime right there in instruction five. With a multiple conspiracy, it requires more than just drug dealers seeking to deal drugs. There has to be the proof of a coherent agreement. I understand that. I understand what you're arguing. But my problem was when I looked at this one and I saw what was in instruction five, which the court gave as an instruction, I find agreeing to the particular crime which the conspirators agreed to commit covering exactly what you would have asked for in a unanimity instruction if you had asked for one. And now I'm supposed to, on plain error, say the court was wrong? Absolutely, you can say that the court was wrong. This is a conspiracy of 20 defendants. Fourteen of them were not even mentioned in the court. What the government did is limit its evidence to basically Greiner and Leland, Great Falls and Havre. That was it, or Butte. What happened after going down the conspiracy with all the rest of the people was not mentioned in the court. So how is it he is being convicted on facts that were not even presented to him at trial? And, Your Honors, I want to save some time for rebuttal. So if I could stop there unless there's something else. Why don't we hear from the government and then you will have saved some time. Thank you. Good morning, Your Honors. May it please the Court. I'm Leif Johnson for the United States. I would like to get right to the issue of the defendant's concession here. On page 25 of their brief, they wrote, rather, the evidence showed the conspiracy involving Osagueda, Rodriguez, Yallop, Greiner, and Leland. Well, that's exactly what the district court found. They have conceded that the essential conspiracy that was presented to the jury in this case was that essence of those essentially four participants, with Rodriguez in the center and his two lieutenants being Leland on the one hand and Greiner on the other. And that's essentially what the district court found. And that finding itself precludes the errors that the appellant is making here. What concerns me about this case is the life sentence. Yes. The three prior drug crimes in California are, at least judging from the sentences imposed, relatively minor. Two of them were possession. One was possession with intent to distribute. But all three, minimal if sentenced at all to time. And you're using them to give him a life sentence without possibility of parole. I have to say that's an awfully long sentence, based upon three prior crimes that were regarded in California as not terribly serious crimes. Felonies, I understand it, but minimal jail time for all three of them. I agree, Your Honor. But you asked for the sentence. Judge Morris was obviously troubled by that at sentencing. And I guess our response is this was a serious crime. As we presented to the district court at sentencing, we had... As I read the transcript of sentencing, if the judge had felt himself free to do so, he would not have sentenced to this amount of time. Well, I think he was reluctant to do so, obviously. So I think you could draw that inference, Your Honor. I think that's fair to say. So the prosecutor's office is, in effect, the sentencer. In the case of mandatory crimes, that is essentially the world we live in. But you had the discretion whether to charge these earlier as a basis for sentencing. We did, and we exercised... So your office is the sentencer. Yes, and we exercised that discretion not so much based on the prior crimes, but based on the present crime and the seriousness of the present crime. How bad was this crime? I've seen an awful lot of bad crimes. Yes. And he is part of a conspiracy to distribute drugs. I get that. You could interpret some of his comments with respect to one of the participants as a threat to kill him, but he might have just been running his mouth talking about what they did in California. And there certainly was no violence carried out. I mean, how bad is this crime such that you thought it fair to sentence this man to life without possibility of parole? Your Honor, there was certainly a real potential for violence in this case, and I think it was evident... I understand there was a potential for violence, but there was none. And I guess my best response to your question, Your Honor, is that there was something of a disjunct in this case between what the defendant decided to do when he turned down our plea agreement that would get him out from under the 851. And your plea agreement, you offered him, I think, 23 years? Well, that's what he says at the sentencing. Our plea agreement allowed him to plead to Count 1, Count 14, and Count 24, which was three substantive accounts with no other stipulations. The point being, Your Honor, and I think what... What was the offer? Was it 23? No, Your Honor. It was simply, as I understand it, he would plead to those three counts and be sentenced probably based on drug weight and the advisory range. The point being is that I understand Judge Morris' frustration with this and the court's because there was a disjunct here. I mean, it appears... And you were late coming in with your notice of sentencing when you wanted your 841 sentence. Excuse me? And you were late coming in with your notice of intent to sentence to life without parole. Correct? No, no. It was more than... It was approximately a month before trial, and I need to point out for the record that we disclosed all of that material when we did our initial disclosure with discovery. So that information was in the record from the outset. We moved under 851 a month before trial because we don't like to make that motion until we're certain the defendant is not going to plead outside of the 851. So one of the problems that we run into in these cases is the optics that we're using the 851 to leverage a plea agreement. And as I understand it, you did it a month before, but me, and this is just me calculating, it was only four and a half months from indictment to trial, right? It was the prior fall in October when the disclosures would have been made that included all of the 851 information that you'll find in the record at page 606. Was there any... I'm going to say the terms because they are in the cases. Temporal proximity between his rejection of the plea offer and the filing of the information? Well, in the government's trial brief, it is set forth, and unfortunately that's not in the excerpts of record, but it is in the docket. The government sets out under Missouri v. Fry that it offered him an agreement prior to the 851s being filed and then after. And the agreement was the same both times, that he could plead without the 851s. Now, the problem in this case is you and I well know that this defendant really had no defense to offer here. He was well aware from our 851 filing that he was facing a life sentence, and he chose to go to trial, apparently, as he explains, at sentencing because his attorneys were suggesting that he should. It seems an irrational decision. Let me ask you another question. Is there any place in this record where the United States made any statements to the defendant or his counsel indicating a relationship between the rejection of the plea offer, the decision to go to trial, and the filing of the information? Nothing in the record that I'm aware of, Your Honor. All I know is that in the government's trial brief, we recited for the court under Missouri v. Fry that we offered him the same agreement twice, once before the 851 and once after. So if I'm looking at this, then it seems to me that I have to, looking at what the DOJ may have done, I have to consider whether the defendant was a leader supervisor in the organization, whether the defendant was involved in the use of threats or violence in connection with the offense, the nature of his history, whether the defendant has ties to large-scale trafficking, and whether the enhancement would create a gross sentencing disparity, correct? Is that what I look at? For the purposes of the guidelines. Yes.  And it should be noted that the PSR, the record shows, it reflects, and this is discussed at sentencing, that the PSR was sent to the defendant, and that he did make comments on the PSR, and none of those comments included any challenge to the 851 prior convictions. I don't want to be mistaken here. Had this gone to trial simply under the guidelines, I think this defendant deserved a good long sentence. So I'm not saying this is a trivial crime, send him back to California and tell him not to send any longer. But I have to say what does bother me is that this is a life without possibility of parole. There are an awful lot of worse, worse crimes in this country that get sentenced to an awful lot of less time, including in Montana, including under federal law. Yes, I understand, Your Honor. And I guess one of the issues that's raised in this case, which I think is appropriate for collateral review, is whether the defendant actually understood what the 851s meant at the time that he refused to change his plea. I mean, that might be an issue for collateral review, and it should be explored in that context. But given the nature of the amounts of drugs, the potential for violence, and the defendant's central role here, that was the decision our office made. On the multiple conspiracy issue, to get back to the points that were raised, we do believe that the district court made adequate findings that the jury was presented with one conspiracy, and the jury couldn't have confused that with another conspiracy. And that takes us out of the realm of instruction error here on either the multiple conspiracy instruction or the specific unanimity instruction. Finally, just for the record, the 851B, notice we conceded that that was technically an error. We don't believe that it was a harmful error, and it is subject to harmful error review under the Severino case. We haven't seen what Mr. Osaguedo would have done with those prior convictions in any event. And with that, if the court has no further questions. I have none. I do not, thank you. No questions. I have just a few moments, but I want to hit one of the main arguments in our case that we didn't get a chance to address in my opening, and that is the ineffective assistance of counsel. That's really the core of what this case is. The government has already said... Is that something you do on reply? I mean, it seems to me you had a chance to go on and argue it before, and the government could have been able to respond. No, no, no. Now you're coming back with something I didn't hear before. Is that the norm? Well, unfortunately... In Montana? Even in Montana. I'm sorry, Your Honor. It was really one of my lead arguments, but we got distracted to the multiple conspiracy. You were afraid to go on and do it. But I want to do it. You decided you wanted to sit down instead. Now you're back at it. Now I want to do it. Do I have to give the government a chance to reply to you? I see what you mean. I guess I don't, because he's the chair, but it seems a little odd that one would go into an argument, and now the government doesn't get a chance to reply before you. Why don't we let you go forward with this argument, and if Mr. Johnson wishes to respond, he will have the opportunity to do so. Thank you, Your Honor. Counsel, on that issue of ineffective assistance, don't we normally leave that for collateral review because facts have to be developed that aren't developed normally on a direct appeal? Yes. Many times we do do it on collateral review, but this is the exceptional case. This is an extraordinary case. So what makes it exceptional? It makes it exceptional because there is enough evidence in the record to indicate that this individual had absolutely no understanding of what was going on in this case. He was absolutely adrift. I think I need to hear from his lawyer. Well, I think we can hear from his lawyer in the terms of the sentencing transcript and the statements that are made. I need to hear from his lawyer, like, what did I tell him, and when did I tell it to him? I think that the court can look at the transcripts. They can look at the understanding and the statements that he made. The statements that even at sentencing, he is looking at this that he is able to raise 3553 arguments. If he truly understood the 851, he wouldn't be saying that. But I agree with my colleague. I tried to find a way to get there, but he joined the conspiracy being interpreted as the interpreter. According to a code of ethics. Just a minute. According to that, we don't know whether the attorney spoke Spanish. We don't know whether the attorney had difficulty communicating with his client. It seems that the record shows that at least he understood English enough to confer with his attorney. So why don't we need, well, Judge Gould says, more stuff. Let's get the record. Let's get it out there and give people a chance to look at it if this is really an ineffective assistance. I think there is evidence in the record that you could say that he needed assistance of an interpreter throughout the course of these proceedings. And he had an interpreter. The court, the district court, made that decision that he needed an interpreter, starting at initial appearance and going all the way through. And, in fact, even using an interpreter. That may end up being very helpful to him on 2255. And because this is a federal conviction, it's going to come back in front of the same judge. So you can make the arguments to Judge Morris on IAC. Thank you, Your Honor. Thank you. Mr. Johnson, do you wish to say anything in response? I don't think you need to. I'm not going to other than to offer to answer any questions the court might have. No, none. Thank you, Your Honor. Okay. Thank both of you for your arguments. United States v. Asagreda v. Ruiz is admitted for decision.
judges: W. Fletcher, Gould, N.R. Smith